IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-00085-KDB-DCK

| | |
|---|---|
| ROBIN T. SHIPP,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN GOLDADE,<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS,<br>INC., AND US BANK,<br><br>Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. No. 33). Plaintiff Robin T. Shipp ("Plaintiff"), appearing *pro se*, seeks to cancel a loan and the related security interests in the real property in Mooresville, North Carolina that secure the loan. The Court has carefully considered this motion and the parties' briefs, exhibits and other communications to the Court (Doc. Nos. 34-36, 40-41). For the reasons discussed below, the Court will **GRANT** the motion and enter judgment in favor of the Defendants.

### I.  LEGAL STANDARD

A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Burbach Broadcasting Co. of Delaware v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002). A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court*

1

*of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

In analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). In particular, when considering a Rule 12(c) motion, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint . . . so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc.*, No. 3:13 cv 679, 2016 U.S. Dist. LEXIS 121043, at *3 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006)); *see also Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159 (4th Cir. 2016). "[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Slater v. Bank of Am.*, No. 1:10-1091, 2012 U.S. Dist. LEXIS 101687, at *21 (S.D. W.Va. June 26, 2012) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Finally, in applying these Rule 12 standards the Court must also consider that Plaintiff is proceeding *pro se,* which requires the Court to liberally construe the pleadings. *See Erikson v. Pardus*, 551 U.S. 89 (2007). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Estelle v. Gamble*, 429 U.S. 97 (1976), *Hughes v. Rowe*, 449 U.S. 5 (1980). However, a district court may not rewrite a *pro se* complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Also, the requirement of liberal construction of *pro se* pleadings does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    FACTS AND PROCEDURAL HISTORY

On April 30, 2007, Robin T. Shipp ("Plaintiff") obtained a loan from Quicken Loans, Inc. in the amount of $168,000.00. The loan was documented in an Adjustable Rate Note (the "Note"), Doc. No. 34-1, in which she agreed to repay the loan in accordance with the terms of the Note. Also, on the same date she executed a Deed of Trust (the "Deed of Trust") to secure the Note, thereby encumbering the real property located at 458 Kelly Avenue, Mooresville, North Carolina 28115 (the "Property"). Doc. No. 34-2. Plaintiff then executed a second Deed of Trust (the "Second Deed of Trust") to finance a home equity line of credit for the property. Doc. No. 34-3. Both Deeds of Trust were publicly recorded at the Office of the Iredell County Register of Deeds (the "Registry"). *Id*.; Doc. No. 34-2. Through a series of assignments, which involved, in part, Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), the Deed of Trust is now

held by Defendant U.S. Bank Trust National Association ("US Bank"), as the Trustee of CitiGroup Mortgage. Doc. No. 2-1 at ¶¶ 23, 25. Defendant Kevin Goldade is alleged to be a corporate trust services employee of US Bank with whom Plaintiff communicated. *Id*. at ¶ 26.

### III. DISCUSSION

Plaintiff purports to raise six claims in her Complaint: (1) "[b]reach of contract with fabricated mortgage documents which created mortgage assignment fraud[;]" (2) "[v]iolation of contract also validation which went unanswered in support of accounting fraud/securities fraud causing a credit default swaps[;]" (3) "[v]iolation of the servicer performance agreement also violation of dual tracking[;]" (4) "[v]iolation under the Uniform Commercial Code Articles 3 and 9[;]" (5) "[u]njust enrichment by the defendant[;]" and (6) "[a]buse of the legal process and actions for damages based on being the holder in due course." *See* Doc. No. 2-1, Complaint. While Plaintiff asserts her claims with great passion and makes numerous references to legal maxims, alleged points of law and conclusory allegations of wrongdoing, the Complaint lacks clear *factual* allegations in support of Plaintiff's claims that permit the Court to conclude that she has sufficiently established plausible claims that can properly proceed. Accordingly, the Court finds that Defendants are entitled to judgment on each of Plaintiff's claims.

**A. Count One of the Complaint for Breach of Contract.**

Plaintiff's first claim is "[b]reach of contract with fabricated mortgage documents which created mortgage assignment fraud[.]" In support of this claim, she argues that various documents recorded on the chain of title to the Property, which are attached as exhibits to the Complaint, are "fraud," "bogus," "shenanigans," "sloppy," "money laundering" or "not authorized" by Plaintiff. *See e.g.*, Doc. No. 2-1 at ¶¶ 15, 16, 17, 22. Critically, however, Plaintiff does not allege how or why any agreements reflected in the documents have been breached.

In North Carolina, "[t]o state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." *Claggett v. Wake Forest University,* 126 N.C. App. 602, 608, 486 S.E.2d 443, 446 (1997). Here, there are no factual allegations in the Complaint to support Plaintiff's claim that any of the Defendants breached any contract with her. Plaintiff's mortgagce loan is governed by the terms of the promissory note and deed of trust. Plaintiff fails to identify any terms within either document or any other document (*see, e.g.*, Doc. No. 2-1 at ¶28 referencing a Servicer Performance Agreement, Servicer Participation Agreement and Mortgage Service & Foreclosure Practices)[1] that were allegedly breached or how the breach occurred. Nor does she state which Defendant allegedly committed the alleged breach. Further, the Complaint does not allege how Plaintiff has suffered any injury caused by the Defendants. Accordingly, Plaintiff has failed to adequately plead a plausible claim for breach of contract in Count One.

    **B. Count One of the Complaint for Fraud.**

To the extent Plaintiff attempts to assert a claim for fraud in Count One of the Complaint, that claim similarly lacks adequate factual support. *See* Doc. No. 2-1, Count One (asserting a claim for ""[b]reach of contract with fabricated mortgage documents which created *mortgage assignment fraud*") (emphasis added). Plaintiff alleges that the title documents are "fraudulent," despite the fact that the referenced documents are recorded in the Iredell County Register of Deeds. (*See* Doc. 2-1 at ¶¶ 23, 26). To plead fraud, a plaintiff must allege the following elements: "a (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3)

---

[1] Indeed, Plaintiff fails to allege that she was a party to these additional alleged agreements.

made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hudgins v. Wagoner*, 204 N.C. App. 480, 487, 694 S.E.2d 436, 443 (2010).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Fourth Circuit has held that the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making misrepresentations and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The Fourth Circuit has further held that the purpose of the Rule 9 higher pleading standard is to "provide notice to a defendant of its alleged misconduct, . . . prevent [] frivolous suits, . . . eliminat[e] fraud actions in which all the facts are learned after discovery, and . . . protect[] defendants from harm to their goodwill and reputation." *United States ex rel. Nathan v. Takeda Pharms. N. Ap., Inc.*, 707 F. 3d 451, 456 (4th Cir. 2013). Thus, to satisfy Rule 9(b), Plaintiff must "set forth the 'who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F. 3d 370, 379 (4th Cir. 2008).

Plaintiff's allegations fall short of stating a claim for fraud. Plaintiff makes a conclusory allegation of fraud but fails to allege any specific facts or circumstances regarding the who, what, when, where, and how any alleged fraudulent representations by Defendants were made, or any advantaged gained by Defendants by such representation. Merely alleging that documents are "fraud," "bogus," "shenanigans," "sloppy," "money laundering" or "not authorized" by Plaintiff

is insufficient to state a claim for fraud under Rule 9(b). Accordingly, Plaintiff's claim of fraud in Count One fails to state a plausible claim.[2]

### C. Count Two of the Complaint for Violation of Contract.

Count Two of the Complaint is titled "Violation of contract also validation which went unanswered in support of accounting fraud/securities fraud causing a credit default swaps." Plaintiff claims "[a]ll Defendants also are in violation of the Servicer Performance Agreement" due to "poor bookkeeping of accounts." Doc. No. 2-1 at ¶ 26. As noted above, Plaintiff never further identifies what she refers to as the Servicer Performance Agreement nor alleges that she is a party to the agreement; and, she does not specify why "poor bookkeeping of accounts" constitutes a violation of said agreement. *See Claggett*, 126 N.C. App. at 608, 486 S.E.2d at 446 ("To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach."). Here, Plaintiff does not allege Defendants were parties to this agreement, that a term of the contract was breached and the facts constituting the breach. Therefore, Plaintiff has failed to adequately allege an actionable breach of the purported "Servicer Performance Agreement."

Also, in Count Two Plaintiff also alleges a violation of "REMIC LAW" which she claims "is a Tax Violation under the IRS that has criminal intent to defraud the Government." Doc. No. 2-1 at ¶ 26. Although she refers to a violation of REMIC law, she does not state what law she

---

[2] The Court need not reach Defendants' alternate additional arguments that the allegations in Count One should be dismissed because: (1) Plaintiff lacks standing to challenge Assignments of the Deed of Trust, and Appointments and Resignations of Substitute Trustees; (2) Plaintiff's allegation that the use of Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") makes Assignments, Deeds of Trusts, and Liens fraudulent is erroneous as a matter of law; and (3) Plaintiff raises allegations related to recorded documents that are unrelated to the lien at issue.

refers to, nor does she provide any supporting factual claims. Also, even if an alleged violation of "REMIC" law "is a Tax Violation under the IRS. . . [,]" Plaintiff cannot bring an action on behalf of the government alleging that Defendants violated tax law. Further, the Complaint lacks any factual allegations related to validation, credit default swaps or fraud. Accordingly, the Court finds that Defendant is entitled to judgment on Count Two.

**D. Count Three of the Complaint for Violation of the "Servicer Performance Agreement" and "Dual Tracking."**

The third count in the Complaint is titled: "Violation of the servicer performance agreement also violation of dual tracking." In support of this claim, Plaintiff restates allegations made in Count Two in paragraph 30 of Count Three: "defendant(s) violated the Service Performance Agreement due to their poor Bookeeping of accounts. Also a violation of the REMIC LAW, which is a Tax Violation under the IRS code. . . ." Doc. No. 2-1 at ¶ 30. Therefore, for the same reasons discussed above, these allegations fail to state a claim.

Paragraph 32 of the Complaint states "[t]hat all Defendants violated THE FEDERAL REAL ESTATE PROCEDURES ACT of 1974, 12 USC Sec 2601 et seq. and Regulation X, promulgated pursuant thereto, 24 C.F.R. Part 3500, Including subsequent amendments. [*sic*]" Doc. No. 2-1 at ¶ 32. However, Plaintiff fails to state any facts in support of Paragraph 32 or even identify which provisions of the Real Estate Settlement Procedures Act ("RESPA") Defendants allegedly breached. Accordingly, Plaintiff has not established facts sufficient for the Court to find a plausible claim in this paragraph.

To the extent Count Three alleges a violation of dual tracking, Plaintiff again fails to state a claim. Although federal regulations under RESPA "prevent[] a lender from engaging in 'dual tracking'- proceeding with a foreclosure proceeding while also evaluating a loss mitigation application[,]" *Polanco v. HSBC Bank USA Nat'l Ass'n*, No. 3:17-CV-00466-GCM, 2019 WL

2590964, at *9 (W.D.N.C. June 21, 2019), that is not what Plaintiff alleges happened here. The Complaint does not allege that Defendants considered her application at the same time they proceeded with a foreclosure action. Thus, Plaintiff fails to state a claim that Defendants impermissibly engaged in "dual tracking."

Finally, Paragraph 33 of Count Three states "That Unlawful practice of re-aging, a collection company must report the original date (actual month and year) the account first became delinquent. This is when the clock begins ticking. This is a violation of Section 623 (a)(5) of the FRCA and NCO was required to pay a $1,500.000.00 fine payable to the Plaintiff." Doc. No. 2-1 at ¶ 33. Neither in this paragraph, nor anywhere else in the Complaint, does Plaintiff allege Defendants committed the practice of re-aging, or provide any specific allegations related to re-aging. This paragraph merely states Plaintiff's characterization of "re-aging" and states it "is a violation" and "NCO was required to pay." Doc. No. 2-1 at ¶ 33. Therefore, the Court finds that Plaintiff has failed to allege sufficient facts to make this a plausible claim.

### E. Count Four of the Complaint for Violation of the Uniform Commercial Code.

Plaintiff's Fourth Count is titled, "Violation under the Uniform Commercial Code Articles 3 and 9[,]." However, the claim makes no factual allegations about Defendants. Instead, Plaintiff alleges "[a] promissory note falls under UCC Art. 3" and, "once it is securitized if falls under UCC Art. 8 & 9 as a security. . . ." Doc. No. 2-1 at ¶ 35. She also alleges various rules of law related to Article 9, and makes other allegations related to a "Principal" in Paragraph 36 as follows:

> The Principal is in violation of UCC & 201 (39). [*sic*] He/ She is also in Violation of undisclosed Principal to a Mortgage over $25,000.00 which after several request for validation He/ She either failed or refuse to validate the alleged Debt and is now in

9

> Default for non response of & 809 15 USC 1692. This created a
> Disparage Contract which for him was Lawful but not legal.

Doc. No. 2-1 at ¶ 36. As with the earlier counts of the Complaint, these allegations lack any meaningful factual support and thus fail to state a valid claim. Plaintiff does not allege who failed to "validate" a debt, how they failed to validate that debt, when they failed to validate a debt, what debt she is referring to, or any basis for recovery. Therefore, Count Four fails to plead a viable cause of action against Defendants.[3]

**F. Count Five of the Complaint for Unjust Enrichment.**

Count Five is titled "Unjust enrichment by defendant." In order to recover on a claim of unjust enrichment in North Carolina, "a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). "An unjust enrichment claim . . . is described as a claim in quasi contract or a contract implied in law." *Id.*

Again, the Complaint lacks critical factual allegations to support this count. Plaintiff has not alleged a claim in quasi contract or contract implied in law. Moreover, pursuant to the Economic Loss Doctrine, "a breach of contract does not ordinarily give rise to a tort action by the promisee against the promisor." *Severn Peanut Co. v. Indus. Fumigant Co.*, 807 F.3d 88, 94 (4th Cir. 2015). Accordingly, where "there is a contract between the parties, the contract governs

---

[3] Even assuming that Plaintiff had alleged Defendants failed to validate a debt as described in 15 U.S.C. § 1692g(b), her argument still lacks proper support. Plaintiff does not allege that she notified a debt collector in writing that the debt is disputed or requested the name and address of the original creditor, and that such a debt collector failed to suspend collection activity until it obtained verification of the debt or the requested information is mailed to the consumer within the statutorily prescribed time. *See* 15 U.S.C. § 1692g(b) (explaining the process for a consumer to dispute a debt).

the claim and the law will not imply a contract." *Se. Shelter Corp.*, 154 N.C. App. at 331, 572 S.E.2d at 206. Taking the Plaintiff's allegations as true, the parties entered into a contract as reflected in the Note. Because the law will not imply a contract where a contract exists, Plaintiff cannot maintain a claim for unjust enrichment.

Also, instead of providing factual allegations that establish the elements of unjust enrichment, Count Five lists various legal conclusions that Defendants "were involved in various elements of misrepresentation, entrapment, nondisclosure and most importantly, Fraud[;]" and "violated the Truth in Lending Act (TILA) by creating a Blind Trust Unrecorded to the Plaintiff and using the Plaintiffs name[.]" Doc. No. 2-1 at ¶¶ 39, 40. Plaintiff also alleges "validation was requested with no response, because the account was not valid. . . ." *Id*. at ¶ 41. Finally, she alleges that "all Defendants received and unjust enrichment and made Plaintiff the injured party because the [NOTE] is a change slip which [RECOUPMENT] is proof no balance has been made a genuine issue of fact of the true holder in due course also is proof of a FDIC Violation." *Id*. at ¶ 42. None of these allegations state a cause of action for unjust enrichment; therefore, Plaintiff fails to state a claim under Count Five.

**G. Count Six of the Complaint for "Abuse of the Legal Process."**

Plaintiff's Sixth Claim is titled "Abuse of the legal process and actions for damages based on being the holder in due course." Count Six reincorporates Plaintiff's previous allegations and further alleges two statements of law:

> 44. The Rules of Evidence: Rule 1002 REQUIREMENT OF THE ORIGINAL- To prove the content of a writing, recording or photograph, is required, except as otherwise provided in these rules or by statute.
>
> 45. Lawyers obligation to disclose faulty foreclosure paperwork when representing banks and other mortgage service companies must tell the court if they know of paperwork problems or known

> felonies in their clients foreclose case, according to the Bar's Professional Ethics Committee.

*Id*. at ¶ ¶ 44, 45. Although "abuse of legal process" is a cognizable cause of action under North Carolina law, "actions for damages based on being the holder in due course" is not. Instead, a "holder in due course" is simply "one who takes an [negotiable] instrument for value, in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *Barclays Bank PLC v. Johnson*, 129 N.C. App. 370, 372, 499 S.E.2d 768, 769 (1998) (citing N.C. Gen. Stat. § 25-3-302(1)). Indeed, Plaintiff makes no allegations about a holder in due course beyond the label she gives Count Six.

More relevant, Plaintiff fails to state a claim for "abuse of legal process." The essential elements of a claim for abuse of process under North Carolina law are: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceeding." *Barnette v. Woody,* 242 N.C. 424, 431, 88 S.E.2d 223, 227–28 (1955). Importantly "abuse of process is the misuse *of legal process* for an ulterior purpose." *Stanback v. Stanback,* 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) (emphasis added). Plaintiff's Complaint does not allege the abuse of a legal process for an ulterior purpose. Rather, her allegations relate to the Defendants' conduct in commercial transactions. Therefore, she fails to state a claim for "abuse of process," and Count Six, like the earlier claims, will be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Judgment on the Pleadings (Doc. No. 33) is **GRANTED;** and

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 19, 2020

Kenneth D. Bell
United States District Judge